# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# DELTA DIVISION

MYKA B. TALLEY                                                                PLAINTIFF
ADC #144315

V.                          No. 2:18-CV-00133-JM-JTR

JUSTINE McDANIEL,
Nurse, EARU, *et al.*                                                         DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James Moody. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received in the office of the United States District Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

## I. Introduction

Plaintiff Myka Talley ("Talley"), a prisoner in the East Arkansas Regional Unit ("EARU") of the Arkansas Division of Correction ("ADC"), filed this *pro se* § 1983 action alleging that, after his left ankle was fractured on June 1, 2018, Defendant Nurses Melody Cook ("Cook") and Justine McDaniel ("McDaniel") provided inadequate medical care for his injury. *Docs. 2 & 6.*[1] The Court previously dismissed claims against Defendants Greg Rechcigl, Tammy Kimble, and Tameka Kirkwood. *Docs. 37 & 39*.

Defendants Cook and McDaniel have filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Undisputed Facts.[2] *Docs. 50, 51, 52*. Talley filed Responses to Defendants' Motion for Summary Judgment and Statement of Undisputed Facts. *Docs. 56, 57*. Defendants Cook and McDaniel filed a Reply to Talley's Response. *Doc. 59*.

---

[1] The Court has construed Talley's *pro se* Complaint and Amended Complaint, together, as constituting his claims. *See Kiir v. N.D. Pub. Health,* 651 Fed. Appx. 567, 568 (8th Cir. 2016) (amendment "intended to supplement, rather than to supplant, the original complaint," should be read together with original complaint); *Cooper v. Schriro,* 189 F.3d 781, 783 (8th Cir. 1999) (*pro se* pleadings must be liberally construed).

[2] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

Talley also filed his own Motion for Summary Judgment and Statement of Facts. *Docs. 55, 62*. Defendants Cook and McDaniel filed Responses to Talley's Motion for Summary Judgment and Statement of Facts. *Docs. 60, 65*.

Before reaching the merits of the competing Motions for Summary Judgment, the Court will review the relevant undisputed facts giving rise to Talley's claims.

1. At all times relevant to this action, Talley was a prisoner in the EARU of the ADC. *Doc. 51 at 1; Doc. 56 at 1*. Cook and McDaniel were nurses in the EARU infirmary. *Doc. 51 at 1–3, 6; Doc. 56 at 1*.

2. On June 1, 2018, Talley suffered an acute fracture of his left distal fibula while going up the stairs in his barracks. *Doc. 51 at 2; Doc. 56 at 2; Doc. 65 at 1*.

3. Shortly after Talley's injury on June 1, 2018, McDaniel used a wheelchair to transport Talley to the infirmary. *Doc. 65 at 1–2*.

4. After arriving at the infirmary, Cook assessed Talley's injury and noted: (a) swelling and bruising to Talley's left foot; and (b) Talley's pedal pulse and capillary refill were good, pain upon range of motion. *Doc. 51 at 2; Doc. 56 at 2*.

5. Cook provided Talley with an ice pack and a crutch; instructed him to elevate his leg; and gave him a script for Tylenol, three times a day, for seven days. *Doc. 51 at 3; Doc. 56 at 3*.

6. Talley alleges that the foregoing care and treatment he received from Cook and McDaniel, on June 1, 2018, constituted deliberate indifference to his serious medical needs. *Doc. 51 at 1; Doc. 56 at 1–2.*

7. Advanced Practice Registered Nurse ("APRN") Geraldine Campbell ordered an x-ray of Talley's left leg, which was scheduled for June 6, 2018. *Doc. 51 at 3; Doc. 56 at 3.*

8. The x-ray was taken on June 3, 2018, earlier than originally scheduled. A radiologist read the x-ray on June 4, 2018 and concluded that Talley suffered an acute fracture of his left distal fibula, with displacement. *Doc. 51 at 3; Doc. 56 at 3.* APRN Campbell reviewed the radiology report the same day, and, on June 5, 2018, submitted a request for Talley to be evaluated by an outside orthopedist. *Doc. 51 at 3–4; Doc. 56 at 3–4.*

9. On July 2, 2018, outside orthopedist Dr. Antonio Howard examined Talley. *Doc. 51 at 4; Doc. 56 at 4.* Dr. Howard ordered and reviewed additional x-rays and noted Talley should "continue partial weight bearing with a single axillary crutch until he no longer has pain with ambulation." *Doc. 51 at 5; Doc. 56 at 4.* Dr. Howard also gave Talley exercises to do for range of motion. *Id.*

10. During his examination of Talley on July 2, 2018, Dr. Howard advised him that his fracture was healing and that, with more time, it was expected to continue to heal completely. *Doc. 51 at 5; Doc. 56 at 5.* Dr. Howard also advised

Talley that he could "advance activity as tolerated." *Id*. Talley agreed with Dr. Howard's treatment plan. *Doc. 51 at 6; Doc. 56 at 5*.

11.     Talley testified at his deposition that, on June 1, 2018, his clinical encounter with Cook lasted approximately 30 minutes and he saw McDaniel for approximately 2 minutes. *Doc. 51 at 6; Doc. 56 at 5*.

12.     Talley testified that he believed Cook should have provided him a wheelchair or two crutches, instead of only one crutch. *Doc. 51 at 6; Doc. 56 at 6*. According to Talley, Cook initially was going to provide Talley with a wheelchair, but McDaniel told Cook that Talley only required one crutch. *Doc. 51 at 6; Doc. 56 at 5*.

13.     Talley acknowledges that various metal components of a wheelchair and crutches can be used as weapons in the prison setting. *Doc. 51 at 6–7; Doc. 56 at 6*.

14.     The infirmary was approximately 50 feet from Talley's barracks. Talley testified he required assistance from another inmate to travel the 50 feet from the infirmary on the day of his injury. *Doc. 65 at 4–5*. The pill call window was approximately 30 feet from Talley's barracks. With the single crutch, Talley was able to go to the pill call window to collect his prescribed Tylenol. *Doc. 51 at 7; Doc. 56 at 6–7*.

15. Shortly after Talley's injury, he was seen by a nurse, provided prescription medication for pain, an ice pack, and a crutch, and advised to elevate his leg. An order was entered for an x-ray, and Talley was not required to work after his fall. *Doc. 51 at 7; Doc. 56 at 7.*

16. Dr. Nannette Vowell, a medical care provider for ADC inmates, reviewed Talley's medical records and stated that in her medical opinion, Talley was provided with appropriate care and treatment for his injury. *Doc. 51 at 8; Doc. 51-3.* Talley disagrees with Dr. Vowell's opinion because he was not seen by a doctor until 19 days after his injury and he did not receive an Ace band wrap. *Doc. 56 at 7.*

17. Talley agrees that orthopedist Dr. Howard did not recommend a cast or surgery. Dr. Howard recommended Naproxen for pain. Talley agrees that the orthopedic consultation was appropriate. *Doc. 51 at 9; Doc. 56 at 7.*

18. Talley acknowledges that, after his injury, he was able to be non-weight bearing on his left leg and foot. *Doc. 51 at 10; Doc. 56 at 8.*

19. According to the ADC Deputy Director, Cook did not follow nursing protocol because Talley had a visible deformity, but Cook failed to have Talley seen by a medical provider within 24 hours. *Doc. 65 at 3–4.*

## II.   Discussion

For the reasons explained below, Talley has failed to demonstrate that Cook or McDaniel acted with deliberate indifference in the medical treatment they

6

provided for his serious medical needs. Accordingly, Defendants' Motion for Summary Judgment (*Doc. 50*) should be granted.

To establish a constitutional violation, Talley must demonstrate an objectively serious medical need that Cook and McDaniel knew about and deliberately disregarded. *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009). While Talley's fractured fibula unquestionably was a serious medical need, his deliberate indifference claim requires that he demonstrate that Cook and McDaniel acted with "a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Id*. (internal quotation omitted). "[D]eliberate indifference requires a highly culpable state of mind approaching actual intent." *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993).

Shortly after Talley's injury, McDaniel used a wheelchair to transport him to the infirmary and Cook assessed his injury. Cook examined Talley and noted he had swelling and bruising to his left foot, his pedal pulse and capillary refill were good, and he had pain upon range of motion. *Doc. 51 at 2; Doc. 56 at 2*. Cook provided Talley with an ice pack and a crutch, instructed Talley to elevate his leg, and prescribed Talley two 325 milligram Tylenol, three times a day, for seven days, as needed. *Doc. 51 at 3; Doc. 56 at 3*. Nothing about the medical care provided by McDaniel and Cook suggests that they were deliberately indifferent to Talley's injury.

7

In Dr. Vowell's medical opinion, the medical care provided by Cook and McDaniel was appropriate care and treatment for Talley's injury. *Doc. 51 at 8; Doc. 51-3*. Talley disagrees with Dr. Vowell's opinion because he was not seen by a doctor until 19 days after his injury and he believes Cook should have provided him with an Ace band wrap for his injury. *Doc. 56 at 7*. Talley also believes he should have been provided a wheelchair or two crutches instead of the one crutch that Cook gave him. *Doc. 51 at 6; Doc. 56 at 6*.

When Talley saw treating orthopedic specialist Dr. Howard on July 2, 2018, he noted Talley should "continue partial weight bearing with a single axillary crutch until he no longer has pain with ambulation." *Doc. 51 at 5; Doc. 56 at 4*. Dr. Howard did not recommend a cast or surgery. Dr. Howard recommended Naproxen for pain and gave Talley exercises to do for range of motion. *Id*.

Dr. Howard advised Talley that his fracture was healing and that the fracture was expected to continue to heal completely with time. *Doc. 51 at 5; Doc. 56 at 5*. Dr. Howard also advised Talley that Talley could "advance activity as tolerated."

Essentially, Dr. Howard recommended continuing the same medical care that was prescribed by Cook and McDaniel. Dr. Howard recommended a single crutch, over-the-counter pain medication, and activity as tolerated. Cook prescribed Tylenol for pain, an ice pack, a single crutch, and advised Talley to elevate his leg. *Doc. 51 at 7; Doc. 56 at 7*.

8

Talley agreed that the orthopedic consultation was appropriate. *Doc. 51 at 9; Doc. 56 at 7*. He also agreed with Dr. Howard's treatment plan. *Doc. 51 at 6; Doc. 56 at 5*. Because the medical care provided by Cook and McDaniel was almost exactly the same as the treatment plan implemented by orthopedic specialist Dr. Howard, Talley has not and cannot demonstrate that Cook and McDaniel were deliberately indifferent to his injury.

According to the ADC Deputy Director, Cook did not follow nursing protocol because Talley had a visible deformity and was not seen by a medical provider within 24 hours. *Doc. 65 at 3–4*. However, Cook's failure to follow a nursing protocol falls far short of establishing she violated Talley's constitutional rights under § 1983. *Williams v. Nix*, 1 F.3d 712, 717 (8th Cir. 1993); *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (no § 1983 liability for prison policy violation). The nineteen-day delay in Talley being examined by Dr. Howard did not result in any injury to Talley, and constituted, at most, negligence on the part of Cook. A showing of negligence or even gross negligence, however, is not enough to meet the deliberate indifference standard. *Allard v. Baldwin*, 779 F.3d 768, 771–72 (8th Cir. 2015).

Viewing the undisputed facts in a light most favorable to Talley, no reasonable jury could find that Cook and McDaniel were deliberately indifferent to Talley's injury on June 1, 2018. The medical records and the affidavit of Dr. Vowell establish

that Cook and McDaniel provided adequate medical care for Talley's injury. Talley has failed to come forward with any plausible facts demonstrating that he received inadequate medical care from Cook and McDaniel. *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997). Accordingly, Talley's § 1983 claims against Cook and McDaniel, for their alleged deliberate indifference to his serious medical needs, fail as a matter of law.

### III.  Conclusion

IT IS THEREFORE RECOMMENDED THAT Defendants' Motion for Summary Judgment (*Doc. 50*) be GRANTED, and that Talley's claims against Cook and McDaniel be DISMISSED, with prejudice. All other pending motions should be DENIED as moot, and this action, in its entirety, should be dismissed.

Dated this 16th day of August, 2021.

_____
UNITED STATES MAGISTRATE JUDGE